UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SAMUEL W. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:13-CV-287-TAV-HBG |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and Standing Order SO-09-01(Revised) for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21]. Plaintiff Samuel Smith seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

Plaintiff filed a Title XVI application on March 15, 2005 that resulted in favorable decision issued on August 21, 2008. [Tr. 43-50]. Because the Plaintiff was incarcerated at that time, he was unable to receive benefits. Plaintiff was released from prison in June 2010. [See Tr. 33]. Plaintiff protectively filed another Title XVI application for Supplemental Security Income on June 15, 2010, alleging a disability commencing March 15, 2005. [Tr. 98-104]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [R. 53-56; 59-60].

Plaintiff timely filed a request for a hearing, and he appeared before a second ALJ on July 28, 2011 in Knoxville, Tennessee. [Tr. 64; 71-92]. The ALJ issued an unfavorable decision on October 6, 2011. [Tr. 6-22]. Plaintiff filed his appeal of the decision, which the Appeals Council declined to review on April 8, 2013. [R. 1-4].

Having exhausted his administrative remedies, Plaintiff filed a complaint with this Court on May 28, 2013, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

I. **ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since June 15, 2010, the application date.

2. The claimant has the following severe impairments: hepatitis C; osteoarthritis; substance addiction; bipolar; intermittent explosive disorder; and left knee.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFT Part 404, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except due to certain significant nonexertional impairments, the claimant is precluded from any such work requiring frequent contact with the public; excessive vibration; frequent squatting; frequent bending and stooping; and frequent foot controls.

5. The claimant has no past relevant work.

6. The claimant was born [in] 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the date the

2

application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are job numbers that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 15, 2010, the date the application was filed.

[Tr. 11-17 (internal citations omitted)].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

3

economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Rogers v. Comm'r of Soc. Sec.,  486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was

5

reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

*A. Medical Evidence*

In October 2004, Plaintiff began reporting chronic mood swings and poor sleep. [Tr. 226]. Soon after, he was diagnosed with degenerative joint disease of the left knee with a possible meniscal tear and treated with injections. [Tr. 190]. In January 2005, he underwent a left knee arthroscopy, partial medial menisecectomy, and loos body removal. [Tr. 185]. Following the surgery, his orthpaedic surgeon was hopeful that he could return to work within one month. [Id.]. In June 2005, Plaintiff was diagnosed with stage one hepatitis C and began interferon

6

treatment, which he successfully completed. [Tr. 251].

Treatment notes from visits to Cherokee Health System from 2005, state that Plaintiff complained of moodiness, anger, and irritability, but he acknowledged that treatment was helping some with his irritability and agitation. [Tr. 273, 275]. In notes from a July 2005 visit, Plaintiff was diagnosed with bipolar disorder, impulse control disorder, cocaine abuse, and antisocial traits. [Tr. 272]. The Plaintiff was advised that keeping appointments and complying with his medication regime would aid in addressing these conditions. [Id.]. At that visit, his Global Assessment of Functioning ("GAF") was estimated at 48. [Tr. 272]. By November 2005, his cocaine and marijuana abuse was noted to be in remission. [Tr. 273].

While incarcerated in 2007, Plaintiff complained of aggressive and explosive behavior, lack of sleep, trouble with crowds, and auditory and visual hallucinations. [Tr. 301, 329]. He continued to be diagnosed with bipolar disorder, cannabis dependence, and cocaine dependence, but his GAF had risen to 60. [Tr. 302].

In September 2010, Plaintiff attended a consultative psychological examination with Kathryn R. Smith, Ph.D. Plaintiff reported that he obtained his GED, while in prison, without any difficulty. Dr. Smith concluded that Plaintiff fit the criteria for a diagnosis of bipolar disorder. [Tr. 422]. She also noted his history of alcohol and cannabis dependence, which are in remission. [Id.]. She did not find any intellectual problems or issues with cognitive function. [Id.].

Dr. Smith's medical assessment explained:

> Mr. Smith appears capable of understanding, remembering, and carrying out detailed instructions. He has the intellectual ability to do so. Ability to sustain concentration and persist is moderately to severely limited. He is likely to have his work interrupted by psychological symptoms. When he is depressed, he is not going to

7

> be productive and when he is manic, he is not going to be able to finish anything but rather would jump from one thing to another. Ability to interact with others is severely limited. He is irritable and reactive and likely would be inappropriate in a job serving the public. Ability to adapt to changes and requirements is at least moderately and at times severely limited. It is hard for him to adapt to a structure given how wildly variable his own daily structure and daily rhythms are.

[Tr. 422].

The records before the current ALJ include reports from treatment at Cherokee, which he obtained upon his release from prison in June 2010. Specifically, Plaintiff sought treatment with Chad Sims, Ph.D. Plaintiff reported that had been prescribed Depakote, Lithium, and Paxil, but only took Paxil. [Tr. 456]. Plaintiff reported auditory hallucinations and extreme moods. [Tr. 457]. Notes from Plaintiff's October 2010 visit indicate that he voluntarily stopped taking his psychiatric medication "several weeks ago" and was "ambivalent about trying to make use of psychiatric care at present." [Tr. 459]. Dr. Sims noted Plaintiff was not open to therapy although he did indicate he was making "some use of coping skills for avoiding lashing out physically most of the time." [Id.]. A December 2010 medication management note indicated he had stopped taking his medications and that his chief complaint was anger control. [Tr. 652]. Plaintiff demonstrated ambivalence regarding psychiatric medication, but he indicated he would try medication. [Tr. 652].

In January 2011, Dr. Sims noted Plaintiff had kept only three appointments since intake and had not filled his psychiatric prescriptions. [Tr. 650-51]. Plaintiff's appearance, attitude, speech, thought processes and content were normal, although his mood and affect were irritable. [Tr. 651]. He asked Dr. Sims about "accessing documentation to assist with his disability case." [Id.]. Plaintiff reported depressed mood and hypomanic thoughts in March 2011, and

8

demonstrated some evidence of intermittent explosive disorder impulses. [Tr. 659, 660]. During the same period, Dr. Sims suggested Plaintiff engage in physical activity to decrease his feelings of restlessness and Agitation. [Tr. 660]. In April 2011, Plaintiff reported auditory hallucinations (whispers and sounds but no command voices), mood shifts, and a lack of sleep. [Tr. 658]. He agreed to some medication changes but not all of the changes proposed. [Id.].

Plaintiff reported sleep problems again in May 2011, but he stated that he had positive shifts in the amount and quality of his social interactions. [Tr. 656]. He also discussed the positive influence of his aunt and his own sense that his behavior was "counterproductive." [Id.]. In June 2011, Plaintiff ran out of psychiatric medications and missed a follow up appointment as well. [Id.]. He noted his hallucination issues had decreased somewhat, although he expressed rage towards others when he feels manipulated or deceived. [Id.].

In July 2011, Dr. Sims provided a letter stating:

> The purpose of this letter is to provide information about Samuel Smith's behavioral health care at Cherokee Health Systems (CHS) at his request. Mr. Smith was initially seen for an intake appointment by the present writer on June 30th, 2010. He has been involved in biweekly-to-monthly individual therapy appointments and psychiatric care at CHS since that time. His treatment has focused on his history of mood-related complaints and substance dependence relapse prevention. He has kept a total of eleven appointments with the present writer and four with his psychiatric provider.
>
> Mr. Smith has primarily focused on symptoms associated with diagnosed Bipolar Disorder during his sessions with the present writer. He has described frequent difficulty with prominent irritability, chaotic sleep patterns, impulsivity, and racing thoughts. He has also discussed the relatively frequent experience of auditory hallucinations associated with his mood complaints. While his involvement in treatment appears to have been beneficial in terms of assisting him with modest improvements in impulse control, he has continued to complain of the other, aforementioned symptoms. He has noted a tendency to cope through social isolation. Such symptoms and style of coping would be expected to have a negative impact on his ability to attend to basic goal-directed activities. It is recommended that Mr. Smith continue to maintain involvement in behavioral health care at the present time.

[Tr. 661].

*B.  Other Evidence*

The ALJ conducted a hearing on July 28, 2011, at which the Plaintiff testified, [Tr. 25-34]. In addition, Dr. Julian Nadolsky, a vocational expert, offered testimony regarding the jobs available in the national economy and local economy. [Tr. 35-41].

**V.  POSITIONS OF THE PARTIES**

The Plaintiff argues that the ALJ erred by finding that the Plaintiff had a residual functional capacity that was greater than the residual functional capacity found by the ALJ who previously reviewed Plaintiff's claim. The Plaintiff maintains that, where an ALJ has reviewed a claimed period of disability and made a finding regarding residual functional capacity, an ALJ on later review is not permitted to find that the same claimant had a less restrictive residual functional capacity, absent new and material evidence establishing changed circumstances. The Plaintiff argues there is no objective evidence demonstrating that Plaintiff's medical conditions improved, and the Plaintiff contends that the ALJ's stated basis for finding medical improvement is insufficient. In addition, Plaintiff argues that the ALJ misinterpreted Dr. Smith's findings and failed to explain the weight afforded to her findings.

The Commissioner responds that the records of Plaintiff's treatment with Dr. Sims, following his release from prison, indicate that his mental illnesses were improving. The Commissioner maintains that the records demonstrate clear improvements. The Commissioner also argues that there is substantial evidence demonstrating Plaintiff's failure to comply with his treatment regimen, including his failure to appear for scheduled appointments and his declining to take prescription medications. The Commissioner notes that the Plaintiff could be denied benefits based upon his failure to follow the prescribed treatment. Finally, the Commissioner

10

acknowledges that the ALJ did not state the weight afforded to Dr. Smith's opinion, but the Commissioner argues that the ALJ was not required to do so. The Commissioner maintains that the ALJ found Dr. Smith's opinion to be overly restrictive in light of the other medical evidence in the record.

## VI. ANALYSIS

The Court will address each of the issues presented in turn.

### A. Medical Improvement Since Last Disability Determination

There is no dispute that, absent new and material evidence establishing changed circumstances, an ALJ is bound by the findings of the ALJ that previously reviewed a claim. See Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997). The burden of demonstrating changed circumstances is on the Commissioner. Id. at 843.

On August 21, 2008, ALJ William Taylor found that the Plaintiff did "not retain the residual functional capacity to sustain work on a regular and continuing basis at any exertional level." [Tr. 48]. The decision on review, which was rendered October 6, 2011, ALJ Douglas J. Kile found that the Plaintiff could perform light work, with significant nonexertional impairments that precluded certain work. [See Tr. 13]. Based upon the foregoing, the only issue before the Court is whether there was new and material evidence establishing changed circumstances during the relevant period.

In rendering the 2011 decision, the ALJ acknowledged that, absent new and material evidence establishing changed circumstances, he was bound by the findings of the ALJ that previously reviewed a claim. Having considered this rule, the ALJ stated:

> The undersigned concludes that medical improvement has

11

> occurred since another Administrative Law Judge awarded him benefits in 2008. Mental status exam showed that the claimant performed the serial fives and spelled the word "world" backwards. The psychologist opined that the claimant had no more than moderate mental limitations. The claimant's activities of daily living belie his allegations of more severe mental limitations.

[Tr. 13].

The Court finds that the ALJ's explanation is not sufficient to carry the Commissioner's burden of demonstrating changed circumstances. While the ALJ is not bound to give "good reasons," as he is in evaluating the medical opinions of treating physicians, the ALJ must state or explain the changed circumstances that would preclude application of *res judicata*. The ALJ in this case did not do so.

The Court finds that the ALJ did not address any specific medical evidence that would change the previous ALJ's ruling. The previous decision that Plaintiff could not perform work was based upon the ALJ's finding that the Plaintiff's "nonexertional mental functional limitations result[ed] in a substantial loss of ability to carry out the basic demands of competitive, remunerative, unskilled work on a sustained basis at any exertional level." [Tr. 50]. In the decision before the Court, the ALJ did not cite any medical evidence that would undercut this finding. Instead, he cited the fact that the Plaintiff completed a GED while incarcerated and the fact that the Plaintiff could perform serial fives, spell the word "world" backwards, and name cities and political figures. [Tr. 13]. The ALJ did not state how performing these tasks demonstrates that Plaintiff can fulfill the basic demands of competitive, unskilled work. Moreover, there is no indication or discussion in the record of the GED program or whether it was obtained under conditions that would reflect the demands of competitive work.

The ALJ also noted that a psychologist opined that the Plaintiff had no more than

12

moderate limitations. The ALJ did not state the name of the psychologist or the date of the visit, but from the context, it appears that the ALJ is referring to Dr. Smith's opinion. Contrary to the ALJ's finding, Dr. Smith found that the Plaintiff was moderately to severely limited in his ability to sustain concentration. [Tr. 422]. Moreover, she found: "Ability to interact with others is severely limited. He is irritable and reactive and likely would be inappropriate in a job serving the public." [Id.]. She also found: "Ability to adapt to changes and requirements is at least moderately and at times severely limited." [Id.]. Dr. Smith's findings are inconsistent with the ALJ's finding that the "psychologist opined that the claimant had no more than moderate mental limitations." [Tr. 13].

To the extent that the ALJ may have been referring to Dr. Sims as the psychologist, the Court similarly finds that the ALJ does not cite any portion of Dr. Sims's findings that would demonstrate changed circumstances. To the contrary, Dr. Sims opined that his condition would have "a negative impact on his ability to attend to basic goal-directed activities." [Tr. 661].

With regard to the ALJ's finding that the Plaintiff's daily activities of daily living belie his allegations, the Court finds that this finding is so generic that it limits the Court's ability to review it. The ALJ does not cite any specific activity that belies the previous determination, nor does it describe how any such daily activity demonstrates a mental capacity capable of competitive work. Further, the Court finds that the Plaintiff's testimony was to the contrary.[1]

---

[1] Q: Who performs the majority of the household chores?

A: [My aunt] does actually. She does them. That's the reason why we go to the store. I eat, I eat like, I eat stupid. I eat like sandwiches and chips and, you know, soups out of the can and stuff. But she does, when there's something to be cooked, she cooks basically.

Q: All right.

13

Based upon the foregoing, the Court finds that the current ALJ lacked substantial evidence with which to find that new and material evidence showed medical improvement in nonexertional mental functional limitations during the relevant period. Accordingly, the undersigned will recommend that this case be remanded to specify the new and material evidence establishing changed circumstances under Drummond.

**B.      Weight Afforded to the Findings of Kathryn R. Smith, Ph.D.**

The Plaintiff argues that the ALJ also committed reversible error by not explaining his basis for discounting the findings of consulting psychologist Katheryn R. Smith, Ph.D. As noted above, it is not clear from the record if the ALJ did, in fact, rely on Dr. Smith's findings. Thus, the Court finds that the weight afforded to Dr. Smith will be addressed on remand in the context of the Drummond analysis. Therefore, the Court finds that this allegation of error is moot at this time.

**C.      Failure to Follow Treatment Regimen**

As noted by the Commissioner, a claimant may be denied benefits for failing to follow prescribed treatment without good reason under the regulations. 20 C.F.R. § 416.930 (b). The ALJ did not discuss the Plaintiff's failure to follow a treatment regimen as a basis for finding that the Plaintiff's residual functional capacity had changed since the previous decision was issued. The ALJ did not focus upon the Plaintiff's failure to follow a treatment regimen in his discussion as a whole, and the undersigned will not engage in a *de novo* review of this issue on appeal. The ALJ may consider the failure to follow a treatment regimen, as appropriate, in determining

---

A: If I'm half feeling, if I'm feeling good, I'll cut the grass and you know, like clean up the kitchen and living room in the house and whatever else needs to be done so, but because she's just not capable of doing those things so. [Tr. 34].

14

whether to award benefits on remand.

**VII. CONCLUSION**

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 14]** be **GRANTED IN PART AND DENIED IN PART** and that the Commissioner's Motion for Summary Judgment **[Doc. 20]** be **GRANTED IN PART AND DENIED IN PART.** Further, it is **RECOMMENDED** that this case be **REMANDED** to the Commissioner for proceedings consistent with the findings stated above.

                          Respectfully submitted,

                          /s/ Bruce Guyton
                          United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).